Good morning, ladies and gentlemen. We understand all the lawyers have checked in for their arguments, and so we'll hear the cases in the order that they are listed. First case, United States v. MASCHER and PRICE. May it please the Court, Counsel? My name is Tom Hoidle. I represented Tony Mascher in the District Court, and I continue to represent him on appeal. This is an appeal from the orders of the District Court, finding that Mr. Mascher willfully violated the conditions of his probation by failing to report to serve additional intermittent confinement. The sentence was a sentence of intermittent confinement, three months of weekends, a sentence of probation with intermittent confinement. Intermittent confinement is administered by the Bureau of Prisons. They make the designation of the institution. They compute the length of the sentence, and it's handled by the Bureau of Prisons. Let's go back to the beginning, which is Judge Broomfield imposed a sentence on your client. Apparently, Judge Broomfield intended that your client serve either 90 or 120 days, respectively, for the two. He thought that's what he wrote into the judgment. Is there any question that your client understood at the time he was sentenced that he was being sentenced to 90 days cumulatively? Absolutely. The court has to remember that this is the second sentence imposed by Judge Broomfield. The first sentence imposed by Judge Broomfield was a sentence of probation with three months of imprisonment, which was a plainly illegal sentence, which Judge Broomfield recognized and was corrected on a motion that we filed to correct the sentence. So we came back, and the judge then changed the sentence to three months intermittent confinement. There was obviously uncertainty as to exactly what the judge meant by that. He didn't say 90 days. That's my question. So you do dispute on the second sentencing that your client heard 90 days but didn't understand that it meant cumulative, a total of 90 days. Right. The judge did not say 90 days. He said three months. Then how do you explain, as the government points out in its briefing, that Mr. Masher and I guess joined by Mr. Price... It's the other way around. I'm sorry. Price joined by Masher filed, in essence, an objection based upon the round trips between their homes and the jail that they were serving their time in, which can only be totaled if you assume that they had to do a total of 90 and 120 days. Well, that's an issue that Mr. Treon would address for Mr. Price. What we did... Your client joined in the motion, didn't he? We joined in the request to transfer the place of confinement from the Navajo County Jail to the Coconino County Jail because it was closer to Mr. Masher's home. So your position is your client didn't do the math himself to figure out... Absolutely not. And plus, the math wouldn't have been applicable to him because the math was applicable to Mr. Price, who was designated to serve his sentence at the Apache County Jail in St. John's, Arizona, not the Navajo County Jail. And Mr. Price didn't live in the same town that Mr. Masher lived in. Mr. Masher lived in Seligman and Mr. Price lived in Pauldin, which is a different location. So the math wouldn't have applied to him at all. Would you just, I guess, in a sentence, could you explain to us how we are supposed to, why we should overturn Judge Broomfield on this since he was there and administered the whole thing? Well, the reason to overturn Judge Broomfield is because his opinion is in error in several respects, his second opinion that dealt with the issue of credit for time at liberty. Let me just address that issue first, that we obviously have two other issues here. One is that he didn't have jurisdiction. But with respect to the knowledge. Pardon me? With respect to the knowledge and understanding, how do we overturn? Well, the question is two types of knowledge here. Obviously, Defendant Masher was present at the time of sentencing and could have constructive knowledge of what the sentence imposed was. Judge Broomfield seemed to believe that what he had was actual knowledge that a sentence of 90 days was imposed. Given the fact that there was confusion over exactly what the sentence was to be, and given the fact that the Bureau of Prisons, shortly after Mr. Masher reported to serve the sentence, had received, Bureau of Prisons had issued a sentence computation which was audited and given to Mr. Masher where he was required to sign it, which said he was to serve three months of weekends. There's obviously an issue here of ambiguity concerning what exactly the term of the sentence was. And he was entitled to rely upon the Bureau of Prisons calculation. But I don't understand. If I'm the sentencing judge and I know what I mean, what does it really matter what other people mean when I decide to correct what I mean? Well, it matters because it's the defendant's state of knowledge. It's not the judge's knowledge of what he or she may mean. It's the defendant's understanding of what that is. If I'm not breaking a promise or something, if it's not a plea negotiation or something along those lines, if I say I'm sentencing you to 90 days and I'm saying 90 days and then I clarify it because there is this ambiguity, why doesn't the way that the judge clarifies it, why doesn't that trump everything else? Like what Judge Schroeder is saying. Well, because this, as I pointed out in the reply brief, this is not technically a clarification. The judge stated it as a modification, and the modification was necessary in order for the Bureau of Prisons to redesignate Mr. Masher and Mr. Price for additional service of sentence. So this was, in fact, a modification. Let me just get to the issue of credit for time at liberty, because I think that's the point where the judge. Briefly, because then we want to hear from Mr. Trion, too. That's the point where Judge Broomfield's opinion breaks down. The credit for time at liberty doctrine involves three separate analyses, a due process analysis and a stopple or waiver analysis and the equitable relief of credit for time at liberty. Since I don't have much time, I won't go into the due process and the waiver theories. I believe those are stated in the briefs, and our position is well-founded. We disagree with Judge Broomfield's statement that this was not the kind of active misadvice that would allow due process or waiver theories to apply. We believe that the Bureau of Prisons calculations, which are in the Exhibit 6 in the excerpts on page 52 of the excerpts, is the type of active misadvice that this Court dealt with in Johnson v. Williford and found due process. So what date do you suggest we use for the credit? Well, the date that I've suggested is August 9th. He was released on February 3rd. And he's got credit for time served, essentially. That's correct. Now, the credit for time at liberty doctrine, which this Court has set forth in Clark v. Floyd, United States v. Martinez, the other cases, Green v. Christensen, the cases that we've mentioned, what that doctrine requires is only that there be mere negligence in the release of the defendant. And Judge Broomfield's opinion does basically conclude that, that it was mere negligence. Where he finds fault with – where he finds the defendant not meeting the doctrine is that the defendant was at fault. And he was at fault for not protesting his release. And there is absolutely no support in the case law for that. But it was – did his probation officer tell him to go back? No. Not until – at the time he was released, the probation officer did not. The probation officer told him to report to serve additional intermittent confinement as the sentence had been modified in July, and he was supposed to report on August 9th. And that's the time credit that we're seeking between February 3rd of 2002 and August 9th when he was ordered to go back into custody. If you give him credit for the weekends during that period of time, then he has completed the 90-day sentence. I'll save the remainder of my time for a vote. Well, actually, you don't have to. You've used them almost all, Mr. Treonstein. But we'll be generous because this is a unique case. Thank you, Your Honor. Your Honor, I had intended to cede some of my time to Mr. Hoyle for rebuttal if that helps with the calculation. Just tell us your case. Your Honor, picking up on Mr. Hoyle's last comment about what we calculate on behalf of Mr. Price to be the time he was ordered back, it should not be August 9th, but rather August 26th, when the actual petition to revoke his probation was filed. The reason for that is because that August 9th order was, in effect, done without any notice or advice of counsel. Now, does August 9th get your client home free? No, it does not, and, therefore, I'm arguing for August 26th. So it's only a coincidence that you're picking a little extra time to cover these things? Based on solid law. Okay, very good. I think to answer Your Honor's questions about who did the math, I think the record is clear that at the time this question was occurring, it was like making sausage. Nobody knew what the sentence was supposed to be. November 6th, I'm writing a letter to the probation officer saying it's three months and four months. Well, wait a second. How do you explain the petition that your client filed with regard to the round-trip mileage between his home and the county jail where he wanted to do his time? That is clearly based, as I do the math, on an understanding that he had to serve a total of 120 days. And the district court made a factual finding, if I read the record correctly, that your client must have understood that when he filed that petition. Now, what are we to do with Judge Broomfield's factual finding in that regard? Simply conclude that, frankly, it's wrong because at the time it was a developing understanding. How is it clearly erroneous, other than the fact that you disagree with it? On November 30th, a few days after, you have the Bureau of Prisons making its conclusion about how long the sentence is going to be. And then days before that November 15th motion, you have a letter from me to the probation officer as well as telephone conversation on the 13th with the probation officer, where at that time it was the three months and the four months. And then if you look at the appellant's reply excerpts of record, you can see the probation officer's chronological entries where it's unclear even to her. She's making multiple calls to the Bureau of Prisons to figure out what all this stuff means, and it's just an ultimately unclear nature of a sentence. Would you help me, Mr. Treon, with this sentence in Judge Broomfield's order? He said, Although Masher and Price requested a willfulness hearing under the unique circumstances of this proceeding, willfulness is not an issue. However, to the extent it is, the only evidence before the Court is the probation officer's direction to defendants to return to the Bureau of Prisons' custody to complete the custodial portion of the sentence and the failure of the defendants to so report. And on that basis, it's my understanding that he found that you were not without fault. Now, what's wrong with what he did there? At least as to Mr. Price, upon his release, he shortly thereafter met with his probation officer, who then testified under oath that she told him, Congratulations, you're done with your jail. He then gets contacted without any of the procedural notice requirements to come back to jail, and then he gets counsel and the hearings get set. So they don't go back based on their order or their obligation being shunted into this actual correct procedural time frame. I don't understand it. Well, at the time they get the order, they're not represented by counsel. They get no notice. It's just a unilateral action by the probation department, then referring the matter to the Court and the Court issuing its order. They didn't do anything. They just didn't do anything. Well, they contacted counsel. What? They contacted counsel and said, What are we supposed to do? We were told we were done, and now we're told we're not. And so they did what I think was appropriate. It was on the advice of counsel that they didn't try to clear this up? I don't think that was ever part of the record either. No. They didn't take the stand and testify. Okay. We'll give you a minute. We'll give you each a minute on rebuttal. We'll hear from the government. May it please the Court, good morning. Linda Boone on behalf of the United States. In contrast to the usual defendant, defendant Smasher and Price heard their sentences announced twice. Both oral pronouncements were consistent. They were ordered to serve three months and four months. The only difference was the manner in which they were to serve them. The three-month confinement initially was to be straight time with probation, and that was changed upon motion of the defendants to intermittent time, correctly changed by the district court in a timely manner. So are you saying that rather than just go serve their time first and then be subjected to probation after they were released, the defendants asked for the ability to serve the term through weekends? Is that what you're arguing to us? No, Your Honor. The defendants had been ordered to serve their time in the amended sentence, the second sentence. Well, let's go back. I want to start at the beginning because I thought I heard you argue that at the time that the sentence was pronounced, Judge Broomfield was orally consistent in directing that the defendants serve 90 and 120 days. Are you referring to the first sentencing or the second sentencing? Both sentences, Your Honor, were consistent. The time that the district court ordered for the defendants to serve was not changed, only the manner in which they were to serve. And my question is what led to the second sentence? You said it was a petition by the defense? I have motioned by defense to correct an illegal sentence, Your Honor, yes. And what was illegal about the first sentence? The court, this district court may not sentence defendants to probation and a term of straight time confinement at the same time. The district court may order probation and intermittent confinement. Because he couldn't have done a straight time and supervised release? Correct, Your Honor. I see. The probation cannot supervise you at the same time you're in confinement. I understand. So you're saying he never understood that it was going to be different than 90 or 120 days. Absolutely, Your Honor. And the district court, let me back up, this court should also bear in mind that these defendants were former law enforcement officers, criminal law in turn. This is federal court, and, you know, the rules are different in federal criminal. Absolutely, Your Honor. I'm not arguing that they knew the rules, but that legal terms and procedures were not foreign to them. There is absolutely no evidence in the record that at either sentencing, either of these defendants, Price or Masher, had any confusion with the 90 or 120 days, the three months or the four months. They did not request any clarification. The issue was, and what was contested, was whether or not they could be sentenced to any confinement at all based on their motion to correct an illegal sentence. So the three months or the four months was never an issue. It wasn't questioned. If we agree with you and find as a matter of fact, based on Judge Broomfield's factual determination, that the defendants understood from the beginning that they had to serve 90 or 120 days, how does that impact the due process analysis under our decision in Arellano-Rios? Because it seems to me that the problem arises here where the Bureau of Prisons, for whatever reason, releases these defendants. And now, as I understand our case law, we talk about a reasonable expectation of finality based upon the fact of release. Absolutely, Your Honor. So is there an exception if the defendant sort of knows but just decides to remain silent? Well, Your Honor, the government would submit that the cases in this circuit have consistently relied on their finding and their weighing of the equities. Consistently, this Court has said that there has got to be a finding of no contributory fault on the part of the defendants. In this case, even if the Court finds that the defendants were released, that particular point, through no contributory fault of their own by simply remaining silent, once they were released and once the government became aware that there was an error in their being released, rather than reasonably resolve the issue, try to comply with the probation officer's order for them to return, these defendants fought and resisted every step of the way and delayed in every manner possible. What option would the government have had if the government had immediately sought an arrest warrant and through the defendants... But why didn't the government ask for a hearing? The government did ask for a hearing, Your Honor. But the district court didn't order one. The district court did not order one. So by what authority, in the absence of a hearing, which it seems to me that due process requires at a minimum, by what authority does the district court purport to correct this or address this problem by amending the terms of its judgment? Your Honor, the only amendment, quote, unquote, to the order was to change the wording of three months and four months to 90 days and 120 days. So clearly there was an ambiguity in at least so far as the Bureau of Prisons is concerned. At least as far as the Bureau of Prisons is concerned, Your Honor. But not so far as the district court of these defendants is concerned. Correct, Your Honor. That was the fine... Let me ask you this. Here's what troubles me. If we assume that they were aware of what the sentence was, and Judge Broomfield's findings are very strong on that, it seems to me, the question is what constitutes fault for purposes of giving them credit for the time out? Now, in a classic case, the prison lets them out and says, you know, you're done. It wasn't based on their fraud. It wasn't based on anything that they did to manipulate the system. They're out, and they get credit. Yes, Your Honor. Now, here it's kind of unusual because the fault is not that they manipulated anything or that they were guilty of fraud or anything. They simply remained silent. The fault is that what? They didn't do anything to correct the situation? Because that's an odd, you know, that's sort of a... It's a very strange position, Your Honor, because the defendants simply remained silent. However, once... But it's not like either, though, that they thought they had a 10-year sentence and then they get out after, you know, and then after 30 days they let you out. I mean, I think that would be factually distinct from a situation where you've been in there for a while, you don't have a very big sentence, and they let you out because I think most of us that have been in the system any period of time realize that, I don't know, people seem to get out early all the time anyway for a hangnail, this, that, or, you know, it's overcrowding, it's this, that. Absolutely, Your Honor. Absolutely. I agree. However, so, you know, it would sort of seem like, okay, well, yeah, I mean, I've done a fair amount of it and now they say I'm out. Who knows what other problems they have in the jail that they might overcrowding or this, and so I'm done. And, Your Honor, that would be fine if that was where it ended. However, for these defendants, it did not end at that point. They were advised and in this case... So let's assume that they get out, and then when they get out there, they're going to get some credit. Let's assume that they get some credit. When should they stop getting the credit? If, you know, for a moment's argument, you assume that at the time maybe they thought, well, you know, they weren't just being silent, they figured, well, for whatever reason, they're letting me out, I'm done, you know, I've done some time. At what point should they stop getting their credit? For Defendant Price, it is really not clear because the record does not establish when Defendant Price specifically had conversations with his probation officer saying, you must return, the court has said you have to return. There is no evidence in the record specifically for a date. For Defendant... But is there evidence in the record that he was told? Yes, Your Honor. So he didn't go back. Yes, Your Honor. Okay. Now, with respect to Masher, what does the record show? With Defendant Masher, he was specifically advised on February 28th when he contacted the probation officer and told the probation officer he'd been released that the calculation of BOP was being questioned by the probation officer. We have the memo approved by the district court on March 11th, and on April 7th, we have a note in the record at ER 29 and 30 that the defendant had previously been made aware of the memo sent by the probation officer, and he was advised that it was likely he would have to serve more time. And then on 5-19, he was advised by the probation officer that he definitely had to serve more time. Okay. Mr. Yoki, go ahead. Finish what you were going to say. Okay. I was just going to say, but at each of these steps along the way, the probation officers for both Defendant and Masher, President Masher, have been saying, contact counsel, let us know what you're going to do, should we have a hearing, you're in all likelihood going to have to serve. And they each said, no, we're not going to serve, we're going to fight this every step of the way. I can't do anything else. Where is that in the record? Your Honor, at ER 30 and 29 is the notes, the chronological notes from the probation officers incorporating these remarks. Counsel, did the probation officer ever contact the AUSA to alert? Yes, Your Honor. And why didn't the government simply move the court to schedule a hearing and issue summonses if that was necessary? That was the final result, Your Honor. But why did it take so long for the government to do that? Your Honor, the reason it took so long was because the probation officer and the government and the district court were attempting to get the defendants to voluntarily return without an adverse action of a probation violation petition. But the district court and the government finally said, okay, if you defendants will not give us a date when you will comply, then we will take this adverse action. All these people are kind of negotiating about this all the time. Over a six-month period. Six months, yeah. Absolutely, Your Honor, but. Well, Mr. Hurtado mentioned that the probation officer said, congratulations, you've finished your sentence. Is that in the record? That is in the record, Your Honor, yes. And that, you know, obviously the government doesn't contest that. It is the Bureau of Prisons' responsibility to calculate the sentence. But once it was determined that it was wrong, these defendants in every manner sought to deliver. Your experience, has anything like this ever happened? Absolutely not, Your Honor. It is the strangest case I have ever seen. This is a unique one. But, Your Honor, I believe, the government believes that the district court made a very clear finding as to all respects, specifically as to the credibility of these defendants and that the government had no other choice other than to have immediately sought an arrest warrant and thrown the defendants in jail. It was an experienced district judge as well. Thank you. Absolutely, Your Honor. Thank you. One minute. Thank you, Your Honor. Your Honor, this is just not accurate to say that the defendants did nothing. On page 12 of the reply brief, Tony Masher went through with his probation officer continually trying to get advice of counsel. You have to remember, he wasn't represented by counsel because no counsel had been appointed. The probation officer, the record demonstrates the probation officer's attempt with the concurrence of Masher's counsel to schedule a status hearing before Judge Broomfield so that the issues could be resolved. This is Supplemental Excerpts 31 and 32. The prosecutor, not Ms. Boone, but the prosecutor who was handling it at that time, agreed to that. The district court, however, said no, there wouldn't be any hearing, and directed the probation office to schedule surrender dates. That's the date that I have put forth, the August 9th date, which is the surrender date. The reason that this took a period of time is because they were going through problems getting a designation from the Bureau of Prisons, and that's what the issue was at that time. And just let me mention, Judge Schroeder is absolutely correct. The knowledge of Masher and Price is not relevant to the issue of credit for a time at liberty. The only issue there is whether their failure to protest is fault, which this Court has said is not fault. We'll see. Your Honor, just briefly answering the question of when should the credit stop being given as to Mr. Price, the record is never going to be any more precise than it is right now, for example, if there were another hearing because his probation officer testified that it was only on or about March 3rd, a couple of days after his release, that she said, you are done with your jail. And when it came up after that that there was this order that he return, and when she said you need to return, again, is not part of her knowledge from the questioning. I join Mr. Hoyle's earnest comments about the defendant's actions while their sentence was going on. They did do plenty of things. In fact, the record shows that on December 4th, Mr. Price had been contacting his probation officer and trying to understand what was going on with his sentence. Okay. Thank you. Well, the case just argued is submitted for decision. Interesting week. Next case for argument is United States v. Casimiro Bravo Cuevas. Is that it? Yeah, I think so. Yeah. I guess that's it. Thank you. Oh, yeah.
judges: Schroeder, Tallman, Callahan